**Tracy M. BARNES, Plaintiff,**

v.

**ETHAN ALLEN, INC., Defendant.**

**No. 04–61083CIV.**

United States District Court, S.D. Florida.

Feb. 15, 2005.

Donald Appignani, Esquire, Joel E. Greenberg, P.A., Lauderhill, Counsel for Plaintiff.

Richard D. Tuschman, Esquire, Epstein, Becker & Green, P.C., Miami, Counsel for Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

COHN, District Judge.

THIS CAUSE is before the Court upon the Defendant's Motion for Summary Judgment [DE 14]. The Court has carefully considered the motion, response and reply thereto, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Tracy M. Barnes ("Plaintiff"), filed this action against Defendant Ethan Allen, Inc., her former employer ("Defendant"), for alleged violation of the Family and Medical Leave Act ("FMLA"). Plaintiff worked for Defendant from October 28, 2002 through some time in early 2004 at a retail store located in Pembroke Pines, Florida. Plaintiff's employment record with Defendant included recognition as one of Defendant's "top ten design consultants in the Southeast region."

On December 3, 2003, Plaintiff became ill with severe pains in her lower abdomen. After being diagnosed with kidney stones, Plaintiff notified Defendant of her condition on December 5, 2003. On December 24, 2003, Regina Leuci of Defendant's cor-

porate office sent Plaintiff the FMLA forms and health care provider certification that Plaintiff was required to return. Exhibit 5 to Deposition of Tracy Barnes [DE 33].[1] The pages of these forms that the Defendant filled out stated, among other things, that the FMLA leave would continue until January 26, 2004, and that Plaintiff "will ... be required to present a fitness-for-duty certificate prior to being restored to employment. If such certification is required but not received, you may be terminated." Page A1 of Exhibit 5 to Barnes Deposition. On January 7, 2004, Plaintiff submitted the forms and was also approved for Short Term Disability ("STD") benefits. See Exhibits 6 and 7 to Barnes Deposition.

On January 14, 2004, after having another round of kidney stones diagnosed at a hospital on January 6, 2004, Plaintiff's treating physician, Dr. William DeMarchi saw Plaintiff. On this date he provided Plaintiff with a "Return to Work/School" note stating that she has been under his care from December 4, 2003 through "4–6 weeks from today 01/14/04." Exhibit 10 to Barnes Deposition. Plaintiff testified that she sent this note to Lisa Greenberg and Kathy Linkletter, who were her supervisors at the retail store where Plaintiff worked. On January 16, 2004, Plaintiff telephoned Regina Leuci at the corporate office to inform her that she would be out of work for another 4–6 weeks.[2]

During February, according to Plaintiff, she began feeling better. She attempted to contact both her supervisors at the store and Ms. Leuci at the corporate office. Plaintiff testified that her supervisors told her that she still had the job. Plaintiff

1. The deposition of Tracy Barnes was also filed by Defendant [DE 18].

2. There appears to be a factual dispute regarding Plaintiff's submission of the January

14, 2004 note to Defendant. For purposes of summary Judgment, the Court looks at the facts in the light most favorable to Plaintiff.

also testified that when she asked Kathy Linkletter to return to work, she was referred to the corporate office. When Plaintiff contacted the corporate office, she was referred to the store. Barnes Deposition at 63. Meanwhile, on February 4, 2004, Prudential Insurance, the administrator of the STD benefits wrote to Plaintiff to inform her that her benefits were approved through January 4, 2004. Exhibit 6 to Barnes deposition. Plaintiff must have submitted further documentation, because on February 26, 2004, Prudential again wrote to Plaintiff to inform her that her STD benefits expired on January 18, 2004. Exhibit 7 to Barnes deposition. Finally, on March 4, 2004, Prudential wrote to Ethan Allen's corporate office that Plaintiff's STD benefits were terminated effective January 26, 2004. Exhibit 8 to Barnes deposition.

On March 16, 2004, Ethan Allen's corporate office wrote to Plaintiff to inform her that her paid medical leave ended on January 26, 2004. Exhibit 9 to Barnes Deposition. On March 18, 2004, new store manager Brenda Morton sent a certified letter to Plaintiff stating that Prudential has informed Ethan Allen that Plaintiff's disability leave ended on January 26, 2004, but that Plaintiff had not returned to work. Exhibit 13. This letter further informed Plaintiff to send any medical documentation explaining her absence to Regina Leuci at the corporate office. *Id.* In response to this letter, Plaintiff faxed a March 23, 2004 doctor's note to the store, not to the corporate office. Exhibit 14; Barnes Deposition at 71–72.[3] Though she did not remember how she sent the doctor's note to Regina Leuci, Plaintiff believes that she did. *Id.* at 72.[4] In her deposition, Plaintiff conceded that she did not present a fitness-for-duty certification prior to March 23, 2004, though her position is that she was never informed of this requirement when she spoke with her supervisors in February, 2004. Barnes Deposition at 54, 58–59, 62,[5] 64,[6] 70, 73. Plaintiff did concede earlier in her deposition that she was aware that the form she received from Defendant and signed on January 7, 2004 stated the requirement of submission of a fitness-for-duty certification. Barnes de-

---

**3.** The March 23, 2004 note states that Plaintiff was incapacitated from December 4, 2003 to the present, and could return to work "part time for 10 days. Pt has follow up on March 29." Exhibit 14 to Barnes Deposition. The note was actually signed by Dr. DeMarchi's partner, Dr. Barbarite. Deposition of William DeMarchi at 29. Dr. DeMarchi's testified that while his office did not provide any documentation to Plaintiff specifically authorizing a "return to work," in reviewing her file, the earliest date that she was able to return to work would be four to six weeks from January 14, 2004, based upon the note from that date. DeMarchi deposition at 32–33. For reasons explained in the next section, this factual dispute regarding the date Plaintiff was actually fit to return to work is not material to resolution of the Defendant's motion.

**4.** In her declaration submitted with her opposition to Defendant's motion, Plaintiff states that she called Regina Leuci on Monday, March 22, 2004 in response to the March 16 and March 18, 2004 letters from Regina Leuci and Brenda Morton, Declaration of Tracy Barnes [DE 31]. Plaintiff then states that Ms. Leuci told her to obtain a doctor's note and bring it to the store. Plaintiff's declaration then states that she brought the note to the store, but Brenda Morton "was too busy to deal with me." Plaintiff states that she received no further information from Ethan Allen until her July, 2004 termination letter.

**5.** Plaintiff did testify that her gynecologist had authorized her return to work, but this doctor was not treating Plaintiff for the kidney stones, but rather a hormonal problem. Barnes Deposition at 62.

**6.** Barnes at one point testified that "I was told I needed a doctor's note in order to return to work, and I got a doctor's note to return to work [referring to the March 23, 2004 note]." Barnes Deposition at 64.

position at 46–47. Plaintiff never did return to work, and was terminated on July 27, 2004 for having an unexplained absence for six months. This lawsuit was filed on August 17, 2004.

Following a period of discovery, Defendant moved for summary judgment on Plaintiff's FMLA claim. After Defendant filed its reply on January 27, 2005, Plaintiff moved to strike the supplemental declaration of Regina Leuci. Defendant filed an opposition to this motion and a request for sanctions against Plaintiff for filing the motion to strike [DE 36]. Plaintiff withdrew the motion to strike on January 31, 2005 [DE 37]. The motion for summary judgment is therefore ripe for review.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### B. Family and Medical Leave Act

■ To preserve the availability of the rights granted by the FMLA, and to enforce them, "the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in

which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c)." *Strickland v. Water Works and Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001).[7]

■ In this case, Plaintiff's Complaint does not specify which type of FMLA claim was alleged. Since the record is clear that Plaintiff was on paid STD leave for about seven weeks and did not suffer any adverse employment action until after at least another five weeks, summary judgment is appropriate for Defendants if the claim is one for interference with FMLA rights, since Plaintiff received more than twelve weeks of leave.[8] Even though ultimately Plaintiff's effective termination from the payroll was January 26, 2004, that termination did not take formally take place until several months later. Such later action cannot be construed as denying or preventing Plaintiff from taking her FMLA leave.

■ Rather, Plaintiff's claim can be analyzed under the Title VII burden-shifting retaliation standard. *See Brungart v. BellSouth Telecommunications,* 231 F.3d 791, 799 (11th Cir.2000). In order to state a claim of retaliation based on indirect or circumstantial evidence, an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Parris v. Miami Herald Publishing Co.,* 216 F.3d 1298, 1301 (11th Cir.2000). In this case, it is clear that Plaintiff availed herself of FMLA leave and suffered an adverse employment action by virtue of her termination. It is also clear that the termination was causally related to the protected activity, as the termination was based upon being absent from work or "inactive" for six months.

However, Defendant argues that the reason for termination, absence from work for six months, was caused by Plaintiff's failure to submit a fitness-for-duty certification to return to work pursuant to the FMLA. If uniformly-applied, federal law allows employers to require such certification. 29 C.F.R. § 825.310(a). Upon proper notice, which was given in writing in this case, an employer may terminate an employee who fails to provide certification "at the time FMLA leave is concluded." 29 C.F.R. § 825.311(c).

■ Plaintiff argues that the January 14, 2004 note from Dr. Dernarchi, stating

---

7. While the FMLA does not clearly delineate these two claims, "interference" and "retaliation" are the labels courts have used in describing an employee's claims under the Act. *See, e.g., O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1352 (11th Cir.2000). The relevant part of the Act, 29 U.S.C. § 2615(a), reads as follows:

> (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

8. The FMLA specifically allows employers to substitute accrued paid leave for the twelve unpaid weeks of FMLA leave. 29 U.S.C. § 2612(d)(2). The Eleventh Circuit has rejected as unenforceable the EEOC regulations requiring prospective notice by an employer to an employee regarding use of paid leave as FMLA leave. *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1308 (11th Cir.1999). The United States Supreme Court agreed with this conclusion in *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 90–91, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). In other words, employers are free to substitute paid leave for FMLA leave, and need not give an additional 12 weeks of FMLA leave on top of accrued paid leave.

that Plaintiff prospectively may return to work in 4–6 weeks, is sufficient certification under the FMLA. The Court disagrees. Although the certification "itself need only be a simple statement of the employee's ability to return to work," according to 29 C.F.R. § 825.310(c), it must be relevant to the employees' condition at the time FMLA leave is concluded. Allowing a six-week old note to qualify as a fitness-for-duty certification would not be reasonable under the FMLA.[9] At the other end of the timeline, Plaintiff's March 23, 2004 medical certification was submitted four weeks after her FMLA leave expired. Thus, neither the January 14 note nor the March 23 note legally qualify as a valid fitness-for-duty certification.

Plaintiff relies upon *Albert v. Runyon,* 6 F.Supp.2d 57, 65–66 (D.Mass.1998), wherein a District Court held that the Postal Service may not conduct any type of Investigation into a medical certification that an employee may return to duty, unless there are other reasons, apart from the fact that FMLA leave was taken. In *Al-*

*bert,* an employee who provided a certification to return to work was not reinstated by her employer until a medical examination was completed by the employer. The court determined that such a condition was not allowed under the FMLA. In the present case, Plaintiff never submitted a timely fitness-for-duty certification, thus the reasoning of *Albert* does not help Plaintiff's argument.[10] Here, there was no valid fitness-for-duty certification.

Plaintiff also argues that there are factual disputes regarding what Ethan Allen employees may have orally told Plaintiff during February, 2004. Taking the facts in the light most favorable to Plaintiff, the fact that some statements may have been made by the store supervisors along the lines that Plaintiff should not worry about her job, or that Plaintiff was not told that the January 14, 2004 certification was insufficient are immaterial; Plaintiff was on written notice that a fitness for duty certificate was required and that documentation to explain the absence after January 26, 2004, should be sent to the corporate office.[11] There is no dispute that a certifica-

---

**9.** The January 14, 2004 note could suffice as a "new medical certification for a serious health condition." See 29 C.F.R. § 825.311(c). In that case Plaintiff's FMLA leave should have extended until February 27, 2004. However, as noted above, Defendant did not take adverse action against Plaintiff until July, 2004. In addition, FMLA leave need not be paid leave. To the extent Plaintiff may have a claim for improper denial of STD benefits for the period from January 27, 2004 through February 27, 2004, such a claim, if any right to such benefits exists, would be a claim under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), not the FMLA.

**10.** In *Burton v. Neumann,* 5 Wage & Hour Cas.2d (BNA) 1138, 1999 WL 973445 (S.D.Fla.), a case relied upon by Defendant, the Court granted summary judgment on an FMLA claim where a plaintiff did not submit the required return-to-duty certification.

**11.** Plaintiff essentially argues that because Defendant did not communicate to her that a certification would be necessary at the time of reinstatement, she believed that she had complied with the certification requirement in the form of the January 14, 2004 note. However, it should have been clear to Plaintiff, based upon Defendant's actions, including letters from STD administrator Prudential dated February 4 (stating leave approved through January 4) and February 26 (stating leave approved through January 18), as well as Defendant's failure to approve her return to work during February, that the something else was required. After the March letters from Defendant to Plaintiff demanding to know her status finally triggered Plaintiff to obtain medical certification, the March 23, 2004 certification did not state that Plaintiff could have returned to work by February 26, 2004, the date her FMLA leave expired.

tion was not provided until March 23, 2004, with an effective date of March 23, 2004. This date is after the expiration of Plaintiff's FMLA leave, which expired on February 27, 2004.[12]

Returning to the burden-shifting analysis, Plaintiff has simply not presented any evidence to raise an inference that Defendant's offered explanation for her termination (Plaintiff's absence from work resulting from failure to submit medical certification of return to work) was mere pretext for the termination decision. Rather, it was a decision within the framework of the FMLA and its implementing regulations.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE 14] is hereby **GRANTED**;

2. Defendant's Motion for Sanctions [DE 36–2] is hereby **DENIED**;

3. The Court shall separately enter judgment for Defendant.

---

12. Defendant urges that Court to consider that on March 22, 2004, Plaintiff wrote a medical hardship letter to Defendant's 401(k) administrator in support of a request to prematurely withdraw funds without penalty. Exhibit 11 to Barnes Deposition. In the letter, Plaintiff describes her condition, including the need to "vomit aprox 3–4 times a week" and that she hopes to return to work in the next week or two. Defendant argues that this letter supports its argument that Plaintiff could not have returned to work before February 26, 2004. Plaintiff testified that this letter was describing her condition in January and early February, despite the use of present tense on March 22, 2004. The Court does not rely upon this exhibit in reaching the conclusions in this Order.