James A. BURKETT, Plaintiff,

v.

BEAULIEU GROUP, LLC, Defendant.

No. CIV.A.4:04–CV–139RLV.

United States District Court,
N.D. Georgia,
Rome Division.

Aug. 16, 2005.

Anita B. Hardeman, Harry F. Burnette, Burnette Dobson & Hardeman, Chattanooga, TN, James Miller Aaron, Jr., Harriss Hartman Aaron Wharton & Boyd, Rossville, GA, for Plaintiff.

Robert T. Quackenboss, Hunton & Williams, Beth T. Paxton, Donna L. Keeton, for Atlanta, GA, for Defendant.

## *ORDER*

VINING, Senior District Judge.

In this action the plaintiff alleges that the defendant wrongfully terminated his employment, in violation of the Family and Medical Leave Act ["FMLA"], 29 U.S.C. § 2601 *et seq.* Pending before the court are (1) the defendant's Motion for Judgment on the Pleadings [Doc. No. 31], (2) the defendant's Motion for Leave to Amend Its Answer [Doc. No. 32], (3) the defendant's Motion for Summary Judgment [Doc. No. 41], and (4) the plaintiff's Motion to Correct Clerical Error [Doc. No. 47].

The defendant's Motion for Judgment on the Pleadings seeks judgment on the plaintiff's claim for punitive damages. Since that motion is unopposed, the motion is GRANTED. The defendant's Motion for Leave to Amend Its Answer seeks to add certain defenses and is also unopposed; consequently, the motion is GRANTED. The plaintiff's Motion to Correct Error seeks to correct certain errors contained in the plaintiff's brief in opposition to the defendant's motion for summary judgment. The motion is unopposed and is, therefore, GRANTED.

## I. FACTUAL BACKGROUND

The plaintiff was originally hired by the defendant in 1998 but resigned in February 2000. He was rehired by the defendant in March 2001 and at that time was provided with a copy of the defendant's Employee Handbook. The defendant's written policy concerning leave under FMLA is addressed in that Handbook and provides, inter alia, that eligible employees may annually take up to 12 weeks of unpaid, job-protected leave and are required to provide "[p]eriodic reports during the leave regarding [the employee's] status and intent to return to work" and a "[m]edical certification of fitness for duty before returning to work, if the leave was due to [the employee's] condition." Employee Handbook at p. 18.

With respect to extended medical leave, the Handbook provides:

Eligible employees who have exhausted their family and medical leave and all other employees may be allowed to take extended medical leave of absence, not to exceed 52 weeks beginning the day the leave starts. Employees who take such extended medical leave are *not* guaranteed to be returned to work or reinstatement to a particular job, rate of

pay or shift at the end of their extended medical leave.

Employee Handbook at p. 18.

On June 13, 2003, the plaintiff went to the emergency room at Valley Hospital, part of Parkridge Medical Center, in Chattanooga, Tennessee [hereinafter "Parkridge"], suffering from depression. He was allowed to return home on that day but was instructed to report back the following Monday to begin a series of treatment sessions.

On that Monday, June 16, 2003, the plaintiff informed his immediate supervisor, Mr. J.C. Chandler, that he was being hospitalized. On the next day, Ms. Debby Parsons, Senior Manager of Human Resources for the defendant, mailed a packet of material to the plaintiff about the defendant's leave policy, including the company's policy regarding leave under the FMLA. In this packet was a cover letter, in which Ms. Parsons informed the plaintiff that he needed to complete and return the forms requesting medical leave. The letter went on to say, "If you are able to return to work on the date specified by your physician, you must submit a doctor's release for regular duty to the Human Resources Department. This must be completed prior to your being allowed to return to your job." The letter also informed the plaintiff: "If you are unable to return to work when leave expires (RE-CERTIFICATION MUST BE SUBMITTED EVERY 30 DAYS) you may extend this leave by contacting the Human Resources Department and submitting a physician's statement requesting an extension."

The packet from Ms. Parsons also contained a "Notice to Employees Taking Family/Medical Leave," which stated, "If leave is being taken for your own serious health condition, you will be required to present a fitness-for-duty certificate prior to being restored to employment. If such certification is not received, your return to work may be delayed until such certification is provided." The plaintiff signed this form on June 30, 2003, and returned it to the defendant.

On June 30, 2003, the plaintiff also submitted a Certification of Health Care Provider, which stated that the plaintiff was "unable to work at this time." It also stated the plaintiff was to undergo a partial hospitalization program, Monday through Friday, 9:00 a.m. to 2:00 p.m., for "approximately 10–14 sessions." This certification was undated and was not signed by the plaintiff. Moreover, this certification did not answer certain questions on the form, including the approximate date the condition commenced nor the probable duration of the plaintiff's incapacity; nevertheless, the plaintiff's request for leave was granted by the defendant.

On July 1, 2003, the plaintiff was discharged from the treatment program at Parkridge. His discharge form indicated that he was to have a counseling session with Dr. John Oldham on July 10; however, the plaintiff did not attend that session or any other session thereafter, apparently because of insurance problems. The discharge instructions also recommended that the plaintiff attend a depression support group; however, the plaintiff never attended any depression support group meeting. Finally, the discharge form indicated that the plaintiff had an appointment with Dr. Kevin Ferguson on August 5, 2003.

The plaintiff was aware that he was required to submit a recertification form for his FMLA leave every 30 days and that his first recertification was due by August 2. In late July, at the plaintiff's request, Ms. Parsons faxed a copy of the recertification form to Dr. Ferguson's office. According to the plaintiff, when he visited Dr. Ferguson on August 5, he requested Dr. Ferguson to complete the form and return it to Ms. Parsons. How-

ever, for some reason the form was not returned to the defendant at that time.

On August 15, Ms. Parsons spoke with the plaintiff on the telephone and informed him that the recertification form still had not been returned by Dr. Ferguson. On the same day, Ms. Parsons contacted Dr. Ferguson's office and told them that she had not received the form. On August 18, Ms. Parsons received via fax a Certification of Health Care Provider form from Dr. Ferguson; however, that form was deficient in several respects. It indicated that the plaintiff's condition commenced on June 13, 2003, and that the probable duration was two-three months; however, it did not provide a specific end date. Additionally, the form did not contain a response to the question that asked if the plaintiff was able to return to work.

Upon receiving this incomplete form, Ms. Parsons sent the plaintiff a letter on August 18, informing him that the certification received on that date was not complete. That letter went on to say:

> Jim, in order to keep our records current and continue your compensation and benefits, it is necessary that we have updated medical forms (forwarded again) submitted to this office no later than Friday August 22, 2003.... Failure to supply this updated information by the date noted may result in your medical leave being revoked. In addition, we must discontinue your salaried compensation until this information is received. The discontinuance of salaried compensation will affect our ability to continue payroll deductions for medical benefits and therefore, we will notify the Benefits department.
>
> As per our conversation in the beginning of your FMLA leave, it is your responsibility to see that the certification papers are completed correctly and forwarded to the HR office in the specified time-frame.

After receiving this letter, the plaintiff went to Dr. Ferguson's office and spoke to one of his assistants about the matter.

In response, Dr. Ferguson's office modified the prior certification form so that it contained additional information. The "2–3 months" response to the question regarding "probable duration of the condition" was stricken through and replaced with "September 5, 2003." The response answered "Yes" to the question "Will it be necessary for the employee to take time off from work only intermittently or to work on a less than full schedule as a result of the condition...?" In giving a "probable duration" to this time frame, the form stated, "Released from Dr. Ferguson 9/5/03." Additionally, the form asked, "If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments." In response, the form stated, "Medication—Released 9/5/03 to see Dr. Christenson."

Although the FMLA requires employers to provide only unpaid leave, the plaintiff was receiving his full pay while on FMLA leave. Thus, on August 28, 2003, Ms. Parsons sent the plaintiff a letter, reminding him that his FMLA leave would expire on September 5 and informed him that when his FMLA leave expired, he would be placed on Supplemental Leave of Absence, which did not carry a job guarantee.

During the first week of September, the plaintiff and Ms. Parsons had a telephone conversation in which she reminded him of the necessity of submitting a statement from his doctor stating that he was able to return to work. On September 5, the plaintiff attended a session with Janet Hause, a therapist. He attended a second session on September 15, at which time he requested that she provide him with a return-to-work release. Ms. Hause did not do so since she was not a doctor and did feel that a release from her would be sufficient.

Around this time, the plaintiff learned that the defendant had hired someone to replace him, and this was confirmed in a telephone conversation with Mr. Randy Waldrop, Senior Director of Application Development in the defendant's Information Systems Department, on September 17. On the next day, the plaintiff had a telephone conversation with Ms. Parsons and Ms. Bernadette Martin, the defendant's Director of Human Resources. During that conversation, the plaintiff stated that he was going to see Dr. Christenson on September 22 in order to get a return-to-work release.

On September 22, the plaintiff had another telephone conversation with Ms. Parsons and Ms. Martin. During that conversation the plaintiff informed them for the first time that he considered the August 19 certification from Dr. Ferguson to be a sufficient return-to-work release. Ms. Martin informed the plaintiff that the August certification simply released him to see another doctor as of September 5, 2003, and that she did not consider such a release to be a "return-to-work" release.

Following the conversation with Ms. Martin, the plaintiff went to Dr. Ferguson's office and obtained a note dated September 5, 2003, which stated, "Under my care hospital. May return to work this date with no restrictions." The plaintiff delivered this note to Ms. Martin on October 6, 2003. On October 8, 2003, the plaintiff spoke with Ms. Parsons, Mr. Waldrop, and Mr. Tommy Barge, the defendant's Vice President of Information Systems. In that conversation, the plaintiff was formally informed that his prior position had been filled, that there was no position available for which he was qualified, that his employment was being terminated. The plaintiff declined the severance package subsequently offered to him, and this lawsuit followed.

## II. LEGAL DISCUSSION

The FMLA provides, "As a condition of restoration ... the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work." 29 U.S.C. § 2614(a)(4). The regulations implementing this provision provide in relevant part:

> When requested by the employer pursuant to a uniformly applied policy for similarly-situated employees, the employee must provide medical certification at the time the employee seeks reinstatement at the end of FMLA leave taken for the employee's serious health condition, that the employee is fit for duty and able to return to work ... if the employer has provided the required notice...; the employer may delay restoration until the certification is provided. In this situation, unless the employee provides either a fitness-for-duty certification or a new medical certification for a serious health condition at the time FMLA leave is concluded, the employee may be terminated.

29 C.F.R. § 825.311(c).

In the instant case, it is undisputed that the defendant consistently requires employees to take FMLA leave for their own illnesses to submit fitness-for-duty certifications before they are permitted to return to work. It is also undisputed that the defendant informed the plaintiff, both at the beginning of his leave and just before the leave expired, that he had to submit a fitness-for-duty certification before he could return to work.

Although the plaintiff contends that the August 19 recertification constitutes the required fitness-for-duty certification, allowing him to return to work, this court disagrees. The certification "need only be

a simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310(c). However, it is axiomatic that the "simple statement" be made contemporaneously with the employee's ability to return to work. The August 19 recertification does not state that the plaintiff had the ability to return to work at that time, nor does it give a specific date when the plaintiff would be able to return to work.

The August 19 recertification simply indicated that Dr. Ferguson "estimated" that the "probable duration" of the plaintiff's illness would be until September 5.2003, and that the plaintiff was "released from Dr. Ferguson 9/5/03." Neither of these statements is an unconditional release of the plaintiff to return to work. The court also notes that the August 19 recertification states that the plaintiff is being "Released 9/5/03 to see Dr. Christenson." Being released from one doctor to see another doctor is not an release to return to work.

The only fitness-for-duty certification stating that the plaintiff "may return to work this date with no restrictions" was dated September 5, 2003. However, it is undisputed that the certification was not obtained until September 22 and was backdated by Dr. Ferguson. The court holds that such backdated certification was insufficient under the FMLA and its regulations.

Because the plaintiff did not submit a proper fitness-for-duty certification in a timely fashion, the defendant was entitled to terminate his employment when his FMLA leave expired. Consequently, the defendant's Motion for Summary Judgment [Doc. No. 41] is GRANTED.

### JUDGMENT

This action having come before the court, Honorable Robert L. Vining, Jr., United States District Judge, for consideration of defendant's Motion for summary judgment and Motion for judgment on the pleadings, and the court having granted said motions, it is

Ordered and Adjudged that the plaintiff take nothing; that the defendant recover its costs of this action, and the action be, and the same hereby, is dismissed.