[No. 87056-0. En Banc.]
Argued October 23, 2012. Decided February 21, 2013.

ROBERT CHANEY, *Respondent*, v. PROVIDENCE HEALTH CARE, *Petitioner*.

*Michael B. Love* and *James McPhee* (of *Workland Witherspoon*) and *Michael J. Killeen* (of *Davis Wright Tremaine LLP*), for petitioner.

*Steven C. Lacy* and *Stewart R. Smith* (of *Lacy Kane PS*), for respondent.

¶1 CHAMBERS, J.[*] — Robert Chaney was fired from his position and argues his termination violated the federal Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, as a matter of law. The employer, Providence Health Care d/b/a Sacred Heart Medical Center & Children's Hospital (Providence), claims no violation of the FMLA occurred. The trial court denied motions for a directed verdict on the issue by both Chaney and Providence. Based upon undisputed facts, we hold the trial court erred in failing to grant Chaney's motion for a directed verdict that as a matter of law the hospital violated the FMLA. We affirm the Court of Appeals, *Chaney v. Providence Health Care*, 165 Wn. App. 578, 267 P.3d 544 (2011).

## FACTS

¶2 Chaney worked as a radiologic technician at Providence. In 2005, his wife fell ill after giving birth, Chaney himself suffered a back injury, and he relied heavily on FMLA leave over the next two years. By June 2007, Chaney had used up most of his FMLA leave and had been donated leave from other employees. The record indicates the Providence administration and other staff were growing resentful that Chaney had taken so much time off. On June 25, 2007, an employee reported that Chaney appeared fatigued and incoherent. Although no claim was made that his work was compromised, Chaney was ordered to report for drug testing. The drug test was positive for methadone. Chaney had a prescription for methadone to treat back pain, but the doctor who gave the drug test noted that Chaney "[m]ay need fitness for duty evaluation or visit to his Dr. to fine tune his medication." Ex. P28.

¶3 Providence told Chaney that he had to submit to an evaluation and chose a third party physician, Dr. Royce Van Gerpen, to do the evaluation. Before the evaluation, Chaney

---

[*] Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

went to his own physician, Dr. Jeffrey Jamison, whose office issued a letter on July 5, 2007, stating that Chaney was fit for duty. On July 16, 2007, Chaney visited Dr. Van Gerpen, who said Chaney was not fit for duty due to his prescription medications.[1] On July 31, 2007, the hospital sent a letter to Chaney, stating, "Given that we have no other information, but the work release form that restricts you from working in your position, the Medical Center has concluded that your absence from work is due to a health condition."[2] Ex. P36. Chaney was informed by letter that Providence was unilaterally placing him on FMLA leave as of July 16, 2007 (two weeks earlier), that his leave expired on August 27, 2007, and if he was not released to return to work by that point he would be terminated. The hospital directed Chaney to fill out the FMLA paperwork it sent along with the letter and to have Dr. Van Gerpen fill out the required FMLA medical certification authorizing the leave.

¶4 On August 7, 2007, Dr. Van Gerpen correctly informed the hospital that under the FMLA the medical certification authorizing leave had to be filled out by "the employee's health care provider."[3] Former 29 C.F.R. § 825.310(a) (2006).[4] Dr. Van Gerpen explained that Dr. Jamison was Chaney's health care provider, not Dr. Van Gerpen. The hospital then directed Chaney to have Dr. Jamison fill out the certification. Dr. Jamison filled out the certification on August 10, 2007. Dr. Jamison wrote on the certification that Chaney needed two to four weeks of leave and also wrote on

---

[1] Chaney refused to authorize Dr. Van Gerpen to discuss his prescriptions and medical history with his employer.

[2] This was incorrect. The hospital had a letter from the office of Chaney's personal physician stating that he was able to work.

[3] It appears from the record that the hospital did not understand the FMLA procedures or requirements. Drs. Van Gerpen and Jamison seemed to have a better understanding than the hospital and dealt as best they could with the hospital's handling of the matter.

[4] Throughout this opinion we cite to the regulations in place at the time the relevant events in this case occurred. We note, however, that the more recent regulations are not substantially different.

the form that Chaney "is ok to work as soon as Employer allows." Ex. P45. Since Providence had unilaterally placed Chaney on FMLA leave on July 16 and the purpose of the certification was to authorize that leave, Dr. Jamison's note was written three days prior to the maximum length of the recommended two to four week period of leave.

¶5 On August 16, 2007, Chaney indicated he was prepared to return to work. It is not clear what Providence told him at this point, but it appears Chaney was erroneously informed he needed Dr. Van Gerpen's permission to return to work. This violated the FMLA, under which Chaney could only be required to get authorization from his own health care provider, Dr. Jamison. Chaney went to Dr. Van Gerpen on August 23, 2007, and told him the hospital would not allow him to return to work unless Dr. Van Gerpen changed his recommended restriction. Dr. Van Gerpen refused to change his recommendation.

¶6 On August 27, 2007, Chaney was fired. Providence claimed the termination was proper because Chaney failed to provide a valid fitness for work certification as required under the FMLA. Chaney claimed sufficient certification was provided when his doctor wrote on his medical leave certification form that Chaney was "ok" to return to work. The trial court denied Chaney's motion for a directed verdict on the issue of whether FMLA was violated as a matter of law.[5] Chaney's claims proceeded to trial. At the conclusion of the evidence, Chaney moved for a directed verdict that Providence had violated the FMLA.[6] The trial judge denied the motion, and the jury returned a verdict in favor of the hospital. Chaney appealed the trial court's

[5] Chaney asserted other claims at trial, but here we address only whether Providence violated the FMLA.

[6] In his oral motion for a directed verdict, Chaney's attorney argued that Providence violated the FMLA "by relying on the opinion of a doctor of their choice while ignoring, and not even speaking to, the doctor who was treating the patient in this case, the employee. Under the FMLA, their obligation under the law is to do so." Verbatim Report of Proceedings at 521. This argument correctly stated the undisputed facts and the law.

denial of the motion for a directed verdict. The Court of Appeals reversed the trial court's denial of Chaney's motion for a directed verdict and held Dr. Jamison's fitness for work certification was sufficient as a matter of law under the FMLA. We granted review.

## ANALYSIS

### STANDARD OF REVIEW

 ¶7 On review of a ruling on a motion for a directed verdict, the appellate court applies the same standard as the trial court. *Hizey v. Carpenter*, 119 Wn.2d 251, 272, 830 P.2d 646 (1992) (quoting *Indus. Indem. Co. of Nw. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520 (1990)). A directed verdict is appropriate if, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party. *Harris v. Drake*, 152 Wn.2d 480, 493, 99 P.3d 872 (2004) (citing *Moe v. Wise*, 97 Wn. App. 950, 956, 989 P.2d 1148 (1999)).

### FAMILY AND MEDICAL LEAVE ACT REQUIREMENTS

██ ¶8 Interpretation of a statute and its implementing regulations is also a question of law we review de novo. *In re Impoundment of Chevrolet Truck, Wash. License No. A00125A*, 148 Wn.2d 145, 154, 60 P.3d 53 (2002) (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982)). When an employee takes FMLA leave, the FMLA generally requires the employer to return the employee to her position at the end of the authorized leave period. Former 29 C.F.R. § 825.100(a) (2006). However, the FMLA permits an employer to require the employee to "obtain and present certification from the employee's health care provider that the employee is able to resume work." *Id.* § 825.310(a). Two requirements must be met under the FMLA for the certification to be valid. First, "[t]he certification itself need only be a simple statement of

an employee's ability to return to work." *Id.* § 825.310(c). Second, federal case law holds that "it is axiomatic that the 'simple statement' be made contemporaneously with the employee's ability to return to work." *Burkett v. Beaulieu Grp., LLC*, 382 F. Supp. 2d 1376, 1381 (N.D. Ga. 2005) (quoting former 29 C.F.R. § 825.310(c)). If these two requirements are met, failure to return the employee to work violates the FMLA. In the event an employer is uncertain or has questions about the certification for the employee's fitness to return to work, the employer may ask the treating physician for clarification but may not delay the employees return to work while the request for clarification is being made. Former 29 C.F.R. § 825.310(c).

*A. Contemporaneous Certification of Ability To Return to Work*

¶9 Providence's primary argument to this court is that the simple statement by Dr. Jamison was written on the same form authorizing two to four weeks of prospective medical leave and so was not made contemporaneously with Chaney's ability to return to work. Providence's argument is based on case law holding that the work release statement must be contemporaneous with the employee's ability to return to work. *Burkett*, 382 F. Supp. 2d at 1381 ("it is axiomatic that the 'simple statement' be made contemporaneously with the employee's ability to return to work" (quoting former 29 C.F.R. § 825.310(c))). The hospital argues that "Dr. Jamison indicated that Mr. Chaney needed 'continuous' leave for '2-4 weeks' *after August 10, 2007.*" Pet. for Review at 9 (emphasis added). In other words, because Dr. Jamison had written "ok to work" on the same form on August 10 that authorized "2-4" weeks of FMLA leave, the hospital claims the statement could not have been made contemporaneously with Chaney's ability to work.

¶10 Importantly, this temporal requirement linking the worker's ability to return to work and the statement of his ability to return to work does not mean an employee's

actual ability to work becomes a disputable question of fact. It merely means the fitness certification must "state that the [employee] had the ability to return to work at [the] time [of the statement]." *Burkett*, 382 F. Supp. 2d at 1381. Thus, for example, a statement that an employee will be able to work at some point in the future does not qualify as a fitness certification, but a statement that an employee is currently able to work satisfies the requirement fully if it is made at the end of FMLA leave when the employee is attempting to return to work. *See Barnes v. Ethan Allen, Inc.*, 356 F. Supp. 2d 1306, 1312 (S.D. Fla. 2005) (statement that plaintiff could return to work in 4-6 weeks did not qualify as a certification under the FMLA because the statement "must be relevant to the employee['s] condition at the time FMLA leave is concluded").

¶11 When the three particular documents are read together, they show, contrary to the hospital's argument, that the two to four weeks of leave authorized by Dr. Jamison on August 10 had begun several weeks before on July 16, and the certification of fitness to return to work was therefore contemporaneous with Chaney's ability to return to work. The three documents are (1) a July 31, 2007 letter from Providence to Chaney (letter), Ex. P36; (2) the "Request for Leave of Absence (LOA) and/or Family Medical Leave (FMLA)" (leave request form), Ex. P46; and (3) the "Certification of Health Care Provider" (medical certification form), Ex. P45.

¶12 We turn first to the letter. Providence informed Chaney in the July 31, 2007, letter that "we are notifying you that FMLA benefits are being used, effective July 16, 2007. . . . [T]his leave will run through August 27. If at that time, you are not released to resume your duties; your position will not be held." Ex. P36. The letter then directed Chaney to "[p]lease complete and return the Family and Medical Leave paperwork that was mailed to your home." *Id.* It also told Chaney to have Dr. Van Gerpen, the physician chosen by Providence, fill out a "medical certification"

form. *Id.* The letter directed Chaney to return the medical certification form authorizing the leave by August 7.[7] On August 7, Dr. Van Gerpen informed the hospital that under the FMLA the medical certification form had to be filled out by Chaney's personal physician.[8] On August 10, 2007, Dr. Jamison, instead of Dr. Van Gerpen, filled out the medical certification form sent by the hospital to Chaney for the purpose of authorizing the FMLA leave unilaterally instigated by the hospital on July 16. It is this form that the hospital relies upon to claim that the two to four weeks of leave Dr. Jamison authorized on the form was meant to begin prospectively on August 10. The plain language of the letter directed Chaney to secure an authorization for the leave the hospital imposed on July 16.

¶13 We also consider the leave request form. The leave request form was sent to Chaney along with the medical certification form and also supports the July 16 start date for the leave.[9] The hospital's letter explained that in order to get authorization for the FMLA leave that the hospital instigated on July 16, in addition to the medical certification, Chaney needed to "complete and return the Family and Medical Leave paperwork that was mailed to your home." Ex. P36. The "Family and Medical Leave paperwork" referred to in the letter is a form titled "Request for Leave of Absence (LOA) and/or Family Medical Leave (FMLA)." Ex. P46. The leave request form expressly incorporates by

[7] This was itself a violation of the FMLA, which requires a minimum 15 days' notice under such circumstances. Former 29 C.F.R. § 825.305(b) (2006).

[8] At least one hospital administrator was not pleased by this development, stating by e-mail, "Well that's great! This Dr. VanGerpen [sic] is the one who restricted his ability to work. I'll be surprised if his own MD will complete it because I don't believe he agrees with the restriction . . . oh it just gets more complicated!" Ex. P44. This statement is in stark contrast with the statement in the letter from a week before: "Given that we have no other information, but the work release form that restricts you from working in your position, the Medical Center has concluded that your absence from work is due to a health condition." Ex. P36.

[9] The forms we discuss are not mandated government forms. They were prepared or selected by the hospital to comply with FMLA regulations.

reference the medical certification form. *Id.* ("Health related leaves are provisionally approved pending the receipt of the 'Certification of Health Care Provider' form."). The medical certification form conversely provides the medical justification for the leave request. Ex. P45 ("Your patient is requesting a leave from his/her job. Information from you helps us determine the employee's eligibility for leave."). The two forms go together, as is plain from the forms themselves and the letter directing Chaney to fill out and return both forms.

¶14 Dr. Jamison, in filling out the certification on August 10, left the beginning and end dates for the recommended two to four weeks blank but wrote that Chaney "is ok"—present tense—to return to work. Ex. P45. In addition, the certification form asked, "Is the patient presently incapacitated?" *Id.* Dr. Jamison ticked the "no" box. *Id.* Chaney, in filling out the accompanying leave request form, marked "July 16" as the start date and "[a]s soon as possible" as the return date. Ex. P46. He filled out this form and dated it August 16, 2007. The medical certification form provides the medical basis for the leave requested in the leave request form. Taken together, as they must be, the leave request form and medical certification establish that the two to four weeks of authorized leave began July 16, that Chaney was able to return to work by August 10, and that Chaney was ready and willing to return by August 16, well before his FMLA leave expired on August 27.

## B. Ambiguity and Clarification Requirement

¶15 Petitioner suggests that the statement "is ok to work as soon as Employer allows" is conditional, ambiguous, and therefore ineffective as a release under the FMLA. At least, Providence implies, a factual jury question exists as to this issue. But the FMLA regulations provide for the possibility of a potentially ambiguous statement. Once Dr. Jamison wrote and signed the simple statement that Chaney was "ok to work," Chaney had satisfied the FMLA. *See* former 29

C.F.R. § 825.310(c). If the hospital found the statement of fitness ambiguous, its option was not to terminate Chaney, but rather to seek clarification from Dr. Jamison:

A health care provider employed by the employer may contact the employee's health care provider with the employee's permission, for purposes of clarification of the employee's fitness to return to work. No additional information may be required, and clarification may be requested only for the serious health condition for which FMLA leave was taken. The employer may not delay the employee's return to work while contact with the health care provider is being made.

*Id.* Providence was thus required to return Chaney to his position upon receipt of his doctor's statement, with the option of seeking clarification of the statement.

### C. *Issues of Fact and Issues of Law*

¶16 Juries, not judges, are the triers of facts. However, interpretation of statutes and regulations are issues of law. It is not appropriate for jurors to interpret FMLA regulations. A directed verdict at the close of the evidence is determined by the judge, as an issue of law, and is appropriate if the facts can reasonably support but one legal conclusion. *See Harris*, 152 Wn.2d at 493. On review, we interpret former section 825.310(c) de novo as a matter of law. *Chevrolet Truck*, 148 Wn.2d at 154. While the facts of this case are deceptively complicated, they support only one conclusion. The FMLA permits an employer to request clarification from an employee's health care provider, but it may "not delay the employee's return to work while contact with the health care provider is being made." Former 29 C.F.R. § 825.310(c). It is undisputed that upon receipt of the certification that Chaney was "ok to work," Providence did not seek clarification. Instead of returning Chaney to work, as it was required to do while it obtained clarification, it fired Chaney. The facts are undisputed and as a matter of law Providence violated the FMLA. The trial court erred in failing to grant Chaney's motion at the conclusion of the case.

## CONCLUSION

¶17 When an employee is placed on FMLA leave, the FMLA permits employers to require a note from the employee's doctor stating that the employee is fit to work before reinstating the employee. The note need be only a simple statement that the employee is able to return to work. The only other requirement is that the statement must be made at the same time the employee is able to return to work. Under the FMLA, if these requirements are met, an employer must reinstate the employee. If the employer is concerned about the adequacy of the fitness for work statement, it may seek a clarification from the employee's health care provider but may not delay returning the employee to work.

¶18 Despite some complicated facts, this case is fundamentally simple. We need not reach whether there was any factual question regarding ambiguity in Dr. Jamison's certification because, assuming there was an ambiguity, the FMLA required the hospital to return Chaney to work and seek clarification, not to fire him. Chaney was entitled to a verdict as a matter of law that Providence violated the FMLA. We affirm the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

FAIRHURST, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.

¶19 C. JOHNSON, J. (dissenting) — A central tenet of our legal system is the division of duties between the court and the jury. The court should not lightly intrude upon the important factual and credibility questions reserved for the jury. Here, a properly instructed jury found for Providence Health Care. No challenge is raised as to any evidence considered by this properly instructed jury. Yet the majority disregards the jury's judgment and substitutes its own

conclusion based on a single piece of evidence that was contested at trial. The jury's verdict in this case should be affirmed.

¶20 The path that ultimately leads the majority astray finds its inception with an incorrect standard of review. The majority applies a de novo standard, which makes it far easier to substitute its own judgment. The proper standard of review, however, requires appellate courts to review trial courts' denial of directed verdicts by viewing the facts in the light most favorable to nonmoving parties and drawing all inferences in their favor. " '[O]nly when it is clear that the evidence and reasonable inferences are insufficient to support the jury's verdict' " will relief be granted. *Hizey v. Carpenter*, 119 Wn.2d 251, 272, 830 P.2d 646 (1992) (internal quotation marks omitted) (quoting *Indus. Indem. Co. of Nw. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520 (1990)). The majority essentially reverses this standard of review.

¶21 Viewing this case in the light most favorable to Providence, as we should, the trial court admitted evidence that focused on the issue of whether Robert Chaney was certified to return to work. Chaney was suspended from his job due to the effects of prescription medication. Yet the supposed "certification" neither addressed this condition nor indicated that Dr. Jamison had any idea as to the requirements of Chaney's job. A "fitness for duty" certification should at least address the condition requiring leave to be taken. For example, someone who has had surgery should be "certified" as having recovered or someone who has a broken leg should be "certified" as able to walk. Here, Chaney was suspended because his prescribed medications left him unable to perform his job. The supposed certification contains no indication that his medication levels were ever altered or even examined, and since this informed the basis for his suspension, a certification to return to work should address this condition. But the language of the "certification" stated, "[I]s ok to work as soon as employer

allows." Ex. P45, at 3. Importantly, at trial, and before the jury, this was significant.

¶22 Having been presented with this evidence, the jury could have properly made any number of conclusions. It could have found that Dr. Jamison's statement that Chaney needed two to four weeks of leave was prospective. It could have found the Chaney's leave continued through August 27, making the August 10 certification not contemporaneous. Or perhaps the jury interpreted the August 10 certification according to its actual language, as a form for "determin[ing] the employee's eligibility for leave under the Family Medical Leave Act," not a fitness for duty certification. Ex. P45, at 1. What is even more troubling about the majority's disregard for the jury's verdict is that Dr. Van Gerpen updated his evaluation and considered Chaney unfit to work on August 23, a full two weeks after Dr. Jamison's supposed fitness for duty certification. Regardless, drawing all inferences, as we must, in favor of Providence, the jury could easily have determined that the August 10 certification was an FMLA leave eligibility form, not a fitness for duty certificate.

¶23 In constructing its argument, the majority pieces together three exhibits from the record in an effort to show that the August 10 note was a fitness for duty certification. As the majority correctly observes, such a certification need only be a simple statement of present ability to return to work. However, the court should not need to string together three pieces of contested evidence in order to construe this "simple statement." The simple statement should be clear from its face and address the condition at issue. A fitness for duty certification that fails to address the condition that prompted the suspension from work simply fails as a certification, especially in a case, like here, where the hospital owes a duty to its patients. At the very least, the jury should have some role in making this determination, which occurred here.

¶24 The plaintiff had his opportunity to present and argue his case. No allegation is made that the jury was not

properly instructed as to the relevant law. Chaney had his opportunity and lost. On these facts, we should not upset the verdict of a properly instructed jury.

MADSEN, C.J., and OWENS and J.M. JOHNSON, JJ., concur with C. JOHNSON, J.

Reconsideration denied April 12, 2013.