[No. 29438-2-III.   Division Three.   December 20, 2011.]

ROBERT CHANEY, *Appellant*, v. PROVIDENCE
HEALTH CARE, *Respondent*.

580

*Steven C. Lacy* and *Stewart R. Smith* (of *Lacy & Kane PS*), for appellant.

*Michael B. Love* (of *Workland Witherspoon*), for respondent.

¶1 Sᴡᴇᴇɴᴇʏ, J. — The Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, and its implementing

regulations clearly direct when an employer must return an employee to his job. The triggering event is a return-to-work certification by the employee's physician. Here, the employee provided his physician's return-to-work certification with the caveat "as soon as Employer allows." We conclude that the certification was sufficient to trigger the employer's obligation to return the employee to work and we therefore reverse the judgment entered on a jury verdict in favor of the employer.

## FACTS

¶2 Robert (Bob) Chaney worked at Sacred Heart Medical Center & Children's Hospital as an interventional radiologic technologist. Mr. Chaney's wife became ill after she gave birth to their second child in April 2005. Mr. Chaney took FMLA leave to care for her. He missed significant periods of time from work for four to five months before returning to a more normal schedule. By April 2006, he had used up all of his FMLA leave and his wife's condition had not improved. Mr. Chaney began to rely on donated leave from other employees to continue to care for her before receiving further leave under FMLA in January 2007.

¶3 Mr. Chaney's supervisor, Marshall Francis, assessed his performance in a 2006 annual performance evaluation. He noted that Mr. Chaney had missed work with FMLA leave, but was "meeting standards" overall:

> [Bob's] attendance has been subpar, mostly due to family health issues. This has become an area of concern but hopefully this will improve soon. Also of concern is his relations with fellow workers which need to be addressed and improved. I plan on coaching and mentoring Bob in the coming year with his interaction skills with fellow employees. Bob has the potential to be an outstanding member of the team if these two important issues are resolved.

Ex. P8. Mr. Francis talked with Mr. Chaney at least a dozen times about his excessive absenteeism.

¶4 Mr. Chaney received first and second written warnings in January 2007 after he failed to show up for an on-call procedure and later appeared unfit for duty (he nodded off with a patient). Sacred Heart temporarily suspended Mr. Chaney. Gerry Altermatt is the director of Sacred Heart's radiology department. He called a group together to discuss the incidents with Mr. Chaney. Mr. Chaney explained that he had been deprived of sleep because of his family situation but he, nonetheless, thought he was doing an excellent job. Mr. Altermatt thought otherwise:

> It is very difficult to determine when compassion for an employee and their home situations is being taken advantage of. Family health issues have been bothering Bob for over 18 months. His work performance is deteriorating and his attendance is unreliable. He has maxed out his FMLA and is working with HR [Human Resources] to see if he can get additional FMLA leave time. He has no (or very little) PTO [Paid Time Off] or EIT [Extended Illness Time] left. Other staff are donating PTO to him. For awhile that was okay, but now it's beginning to be resented and his peers don't consider him a reliable and productive staff member.
>
> Is our compassion helping or has it become a crutch that Bob relies on and if so, are we "enabling" his behavior?

Ex. P12.

¶5 Mr. Altermatt and the group investigating Mr. Chaney imposed a number of conditions on his right to return to work and required that he provide a medical release from his doctor. Mr. Chaney's doctor is Jeffrey Jamison, DO. Dr. Jamison provided the medical release for Mr. Chaney's return to work on January 12, 2007. It indicated that Mr. Chaney had chronic medical problems that were flaring but Dr. Jamison believed he would be "completely fit for full-time duty in one week." Ex. P13.

¶6 Mr. Chaney's 2007 annual performance evaluation by Sacred Heart again noted that he was missing work due to FMLA leave, but was "meeting standards" overall:

Bob has had a tumultuous year due to family health issues and friction with coworkers as a result. He is on intermittent FMLA and attendance is spotty. When Bob is here he is technically good. He is compassionate with patients and does a good job of getting the work done. He grasps new technology well and is willing to help wherever needed.

Bob needs to work diligently to get his personal life back on track and also needs to work on better relations with peers. I will work with Bob to help realize these goals as soon as possible.

Ex. P20.

¶7 From January to June 2007, Mr. Chaney showed signs of fatigue. On one occasion, two nurses noticed that Mr. Chaney had dilated or constricted pupils, glassy or reddened eyes, slurred speech, and a staggering or unsteady gait. He also had difficulty speaking when he attempted to describe to the nurses the three dimensional spin procedure he was about to perform on a patient. The nurses notified Mr. Francis and he consulted with Mr. Altermatt about the concerns. Mr. Francis and Mr. Altermatt ordered that Mr. Chaney submit to a drug test. Sacred Heart placed Mr. Chaney on leave pending the results.

¶8 Mr. Chaney tested negative for illicit drugs but positive for methadone. Mr. Chaney explained that he had a prescription for methadone to treat chronic back pain. Dr. Paula Lantsberger was Sacred Heart's medical review officer. She recommended that Mr. Chaney undergo a fitness-for-duty evaluation or a visit to his doctor to fine-tune his medication. Mr. Chaney visited Dr. Jamison before Sacred Heart's fitness-for-duty evaluation. Dr. Jamison's office sent a letter to Sacred Heart that said Mr. Chaney "can safely perform his duties as an xray/special procedures technologist." Ex. P25. It appears that Dr. Jamison did not sign this authorization and there is some dispute over whether he authorized the same.

¶9 Mr. Chaney then went for his fitness-for-duty examination and evaluation by a physician selected by Sacred

Heart, Dr. Royce Van Gerpen. Dr. Van Gerpen specializes in occupational medicine. He asked Mr. Chaney to sign a standard release of information form. Mr. Chaney refused to sign it because he thought that his medical history was privileged and the release went too far; it allowed Sacred Heart access to all of his medical records and history. Dr. Van Gerpen modified the release to allow only "a statement about whether [Mr. Chaney was] fit for duty." Ex. P32; Report of Proceedings (RP) at 360-61. The examination and evaluation proceeded.

¶10 Mr. Chaney reported to Dr. Van Gerpen that he had a long history of chronic back pain and severe anxiety that required treatment with prescription medications. He also brought medical reports from Dr. Jamison's office.

¶11 Dr. Van Gerpen concluded that Mr. Chaney should not be released to return to work because Mr. Chaney was not well adjusted to his medications. Dr. Van Gerpen explained that the six to eight different medications Mr. Chaney was taking (Soma, Ambien, Imitrex, Wellbutrin, methadone, Lorazepam, Norco, etc.) "could adversely affect his ability to concentrate and make rapid and appropriate sequential decisions." Ex. P33. Dr. Van Gerpen also opined that "an individual with this level of medication usage would not be allowed to operate a commercial motor vehicle." Ex. P33. Dr. Van Gerpen provided a limited release for Mr. Chaney to return to work as a general x-ray technician.

¶12 Sacred Heart's human resources department informed Mr. Chaney that it needed more information to better understand Dr. Van Gerpen's restriction. Sacred Heart requested that Mr. Chaney sign a full release for his medical information. He again refused. Sacred Heart concluded that Mr. Chaney's absence from work was due to his health. Sacred Heart then sent him a letter explaining that his time off was being designated as provisional under the FMLA and that benefits were being used as of July 16, 2007. The letter further indicated that his FMLA leave

would expire on August 27, 2007 and if he was not released to return to his full duties as an interventional radiologic technician by that date, his position would not be held for him. The letter directed Mr. Chaney to complete the FMLA paperwork and have Dr. Van Gerpen complete the medical certification portion.

¶13 Dr. Van Gerpen sent a letter to Sacred Heart and explained that he could not complete the FMLA medical certification because he was not Mr. Chaney's physician. Dr. Jamison completed the certification and reported that Mr. Chaney could return to work but added the phrase "as soon as Employer allows." Ex. P45.

¶14 Sacred Heart did not ask Dr. Jamison to clarify or explain during this process.

¶15 Mr. Chaney filled out a request for FMLA leave and indicated that he could return to work immediately. Mr. Chaney returned to Dr. Van Gerpen's office for a follow-up visit on August 23, 2007. He explained that Sacred Heart would not allow him to return to work even as a routine x-ray technician with the restrictions Dr. Van Gerpen imposed. Mr. Chaney reported to Dr. Van Gerpen that he continued to use four to six methadone tablets per day. But he continued to maintain that Sacred Heart did not need to know all of his medical conditions. Dr. Van Gerpen refused to change his opinion that Mr. Chaney was unfit to do his job. Dr. Van Gerpen believed that federal law prohibited a commercial driver from driving while using methadone. Based on this understanding, he did not believe that Mr. Chaney could return to work while on that medication.

¶16 Sacred Heart terminated Mr. Chaney on August 27, 2007.

¶17 Mr. Chaney sued Sacred Heart for disability discrimination (RCW 49.60.180), failure to reasonably accommodate a disability (RCW 49.60.180), violation of the FMLA (29 U.S.C. §§ 2601-2654), and wrongful discharge in violation of public policy. Clerk's Papers (CP) at 1-7. He later

amended the complaint to allege only wrongful discharge in violation of public policy (retaliation for use of FMLA leave) and violation of the FMLA.

¶18 Sacred Heart moved for and the court granted summary judgment and dismissed all of Mr. Chaney's claims. Mr. Chaney moved for reconsideration. The court granted Mr. Chaney's motion as to his FMLA claims: "[Mr. Chaney] is only required to prove use of FMLA was 'a' negative factor, not 'the' factor in a termination. [Mr. Chaney] has produced some evidence." CP at 38.

¶19 The matter proceeded to a jury trial on liability; the question of damages was reserved. At the close of evidence, both Mr. Chaney and Sacred Heart moved for directed verdict. Mr. Chaney argued that Sacred Heart violated the FMLA by not returning him to work following Dr. Jamison's return-to-work certification. Sacred Heart argued that Mr. Chaney was preempted from alleging a state tort claim for wrongful discharge on the same basis as his federal claim under the FMLA. The trial court denied both motions.

¶20 The court refused to give Mr. Chaney's proposed instruction that a commercial driver may report for duty when using methadone when prescribed by a physician. Mr. Chaney also asked the court to instruct the jury that Dr. Van Gerpen could share his information with the hospital despite the physician/patient privilege. The court refused to do so.

¶21 The jury returned a verdict in favor of Sacred Heart.

## DISCUSSION

¶22 Mr. Chaney contends that the court should have granted him judgment as a matter of law based on the statement of his physician (the employee's physician) that he was fit to return to work. That is, Sacred Heart had the obligation under the FMLA to return him to work following his physician's certification. And he argues that Sacred Heart could not, again, as a matter of law, rely on the

fitness-for-duty evaluation of its retained doctor, Dr. Van Gerpen.

¶23 Sacred Heart argues that Dr. Jamison's return-to-work authorization was qualified by the words "as soon as Employer allows" and so the question of whether Sacred Heart had to return Mr. Chaney to work was properly submitted to the jury and Sacred Heart properly considered Dr. Van Gerpen's fitness-for-duty evaluation.

¶24 Our review of the court's refusal to direct a verdict is essentially de novo under the circumstances here. *Winkler v. Giddings*, 146 Wn. App. 387, 394, 190 P.3d 117 (2008). We accept as true Sacred Heart's evidence and all favorable inferences from it. *Stiley v. Block*, 130 Wn.2d 486, 504, 925 P.2d 194 (1996). A directed verdict is appropriate only if there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party. *Harris v. Drake*, 152 Wn.2d 480, 493, 99 P.3d 872 (2004).

### FMLA—Right to Reinstatement—Employee's Health Care Provider

¶25 Mr. Chaney contends that he had the right to return to work when Sacred Heart received Dr. Jamison's certification that he was able to return to work; that is, that Sacred Heart had to let him return to work. Mr. Chaney claims that Sacred Heart's attempts to clarify his medical condition with Dr. Van Gerpen prior to returning him to work violated pertinent FMLA regulations.

¶26 The question here is not whether Mr. Chaney is fit to perform the essential functions of his job; it is rather whether Sacred Heart had the duty to return Mr. Chaney to his job. Dr. Jamison, his physician, certified that he can do the work. And, under the FMLA, that is all that is required. 29 C.F.R. § 825.312(b); *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1004 (6th Cir. 2005). Sacred Heart argues, based on the report from its physician, Dr. Van Gerpen, that Mr. Chaney cannot perform the essential functions of an interventional radiologic technologist. That

fitness for duty evaluation could be undertaken, however, only once Mr. Chaney was returned to work, again, based on his physician's certification. 29 C.F.R. § 825.312(b).

¶27 The FMLA requires that an employee "be restored by the employer to the position of employment held by the employee when the [FMLA] leave commenced." 29 U.S.C. § 2614(a)(1)(A). "[O]nce an employee submits a statement from [his] health care provider which indicates that [he] may return to work, the employer's duty to reinstate [him] has been triggered under the FMLA." *Brumbalough*, 427 F.3d at 1004. "[T]he employer may not request additional information from the heath care provider." 29 C.F.R. § 825.307(a). The employer may contact the health care provider for simple clarification of the handwriting or the meaning of a response. *Id.* But "[t]he employer may not delay the employee's return to work while contact with the health care provider is being made. No second or third opinions on a fitness-for-duty certification may be required." 29 C.F.R. § 825.312(b).

¶28 Here, Sacred Heart sent Mr. Chaney a letter informing him that it was designating his time on suspension as provisional under the FMLA and that his FMLA leave would expire on August 27, 2007. It informed him that if Dr. Van Gerpen did not complete a medical certification releasing him to return to work as an interventional radiologic technician by that date then his position would not be held for him. Mr. Chaney went to Dr. Van Gerpen to complete the certification. On August 7, 2007, Dr. Van Gerpen sent a letter to Sacred Heart explaining that he could not complete the FMLA medical certification because he was not Mr. Chaney's attending physician. Dr. Van Gerpen was correct. *Id.*

¶29 On August 10, 2007, Dr. Jamison certified that Mr. Chaney could return to work "as soon as Employer allows." The court suggested that Dr. Jamison's return-to-work certification was ambiguous:

[F]irst of all we have the opinion of Dr. Van Gerpen that Mr. Chaney is not – he is fit for duty as an x-ray technician, I guess, but not as an intervening radiologist, radiological technician. As a result of that, Mr. Chaney gets a certification from Dr. Jamison, his personal physician, that he is fit to go back to work as soon as the employer will allow, is how he puts it. Which is a bit ambiguous, but be that as it may he says he is fit to go to work. So we have this situation where we have Dr. Van Gerpen saying one thing, Dr. Jamison saying another.

RP at 524.

¶30 The purpose of the FMLA is to protect an employee's job while he or she is on a leave for a serious health condition. 29 U.S.C. § 2601(b)(2). And the FMLA protects the employee's medical privacy by having the employer deal with the employee's own health care provider first. *See* 29 C.F.R. § 825.312(b); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999) (calling right of restoration a "guarantee"); *Albert v. Runyon*, 6 F. Supp. 2d 57, 66 (D. Mass. 1998). But the employer's obligation under the FMLA and the implementing regulations is to seek clarification from the employee's health care provider when faced with an ambiguous return-to-work certification. *Albert*, 6 F. Supp. 2d at 62-63 (citing 29 C.F.R. § 825.310(c)); *c.f. Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997) (where employer requested second opinion when employee's two treating physicians provided conflicting information about whether employee had serious health condition).

¶31 An employee returning from FMLA leave, "shall be entitled" to be restored to his former position, or an equivalent position, of employment. 29 U.S.C. § 2614(a)(1). An employer may condition restoration on a uniform policy that requires each returning employee to obtain a certification of his ability to resume work from his own health care provider. 29 U.S.C. § 2614(a)(4). But the implementing regulations provide that this certification need be only a simple statement "that the employee is able to resume work." 29 C.F.R. § 825.312(b). The regulations allow the

employer, with the employee's permission, to have its own health care provider contact the employee's health care provider "for purposes of clarifying and authenticating" the employee's fitness to return to work. *Id.* The employer may not request additional information, and may request clarification "only for the serious health condition for which FMLA leave was taken." *Id.* Moreover, "[t]he employer may not delay the employee's return to work while contact with the health care provider is being made." *Id.*

¶32 Neither does the FMLA and its implementing regulations authorize an employer to refuse to restore an employee to his job upon submission of a timely but inadequate fitness-for-duty report. 29 C.F.R. § 825.313(d) governs employees who fail to provide any certification at all when they return to work. The regulations provide that "[u]nless the employee provides either a fitness-for-duty certification or a new medical certification for a serious health condition at the time FMLA leave is concluded, the employee may be terminated." 29 C.F.R. § 825.313(d).

¶33 The FMLA does not explicitly prohibit an employer from terminating an employee with a timely but inadequate certification. But here Dr. Jamison's certificate is not inadequate. And, even if it were ambiguous, Sacred Heart's recourse was to return Mr. Chaney to work and only then seek clarification. *Cf.* 29 C.F.R. § 825.312(b); *Brumbalough*, 427 F.3d at 1003-04 (" 'The employer may not delay the employee's return to work while contact with the health care provider is being made.' " (emphasis omitted) (quoting 29 C.F.R. § 825.310(c))).

¶34 Dr. Jamison was Mr. Chaney's health care provider and therefore the proper person to complete the return-to-work certification under the FMLA. 29 C.F.R. § 825.312(a). The authorization need not be detailed or explained. *Harrell v. U.S. Postal Serv.*, 415 F.3d 700, 713-14 (7th Cir. 2005), *modified on reh'g on other grounds*, 445 F.3d 913, 927-28 (7th Cir. 2006). In implementing the FMLA, the secretary of labor did not intend to make an employee's job security subject to

the nuances of the language in a doctor's note. Nor does the FMLA empower employers to pass on the meaning of the employee's treating physician's phraseology. Indeed the legislative purpose here was job security for employees who suffer from serious but temporary health conditions by requiring only a plain statement of the employee's ability to return to work and nothing more from the doctor. *Id.*

¶35 Sacred Heart had the obligation then under the FMLA to seek clarification from Mr. Chaney's physician, Dr. Jamison. 29 C.F.R. § 825.312(b). A health care provider employed by the employer may contact the employee's health care provider with the employee's permission to clarify the employee's fitness to return to work. "The employer may not delay the employee's return to work while contact with the health care provider is being made." *Id.*

¶36 If there was confusion, or some other concerns, about whether Mr. Chaney could perform an essential function of his job, Sacred Heart could have had Dr. Van Gerpen contact Dr. Jamison, with Mr. Chaney's permission, to clarify the employee's fitness to return to work. *See id.*; *Albert*, 6 F. Supp. 2d at 63 (noting secretary of labor declined to allow employers to seek second opinion as to employee's fitness for duty on grounds that statute specifically authorizes second opinions with respect to original medical certification for a leave, but not with respect to the fitness-for-duty certification). Sacred Heart could have sought clarification. *See Brumbalough*, 427 F.3d at 1004 ("If Camelot decided that the same note [i.e., the doctor's note] was insufficient as a fitness-for-duty certification, it should have sought clarification from Brumbalough's doctor.").

¶37 We then conclude that Mr. Chaney was entitled to be restored to his position as an interventional radiologic technologist based on Dr. Jamison's return-to-work certification. 29 C.F.R. § 825.312(b).

¶38  We reverse the judgment of the superior court and we remand for further proceedings.

Korsmo, A.C.J., and Brown, J., concur.

Reconsideration denied January 23, 2012.

Review granted at 174 Wn.2d 1016 (2012).